ASSUMPSIT. # Morehead *vs* Watkyns.

APPEAL FROM THE CLARKE CIRCUIT.

*Case* 55.

*Oct.* 19.

Case stated.

Facts agreed in
the Circuit Ct.

*Statute of frauds. Landlord and tenant. Notice to quit.*

CHIEF JUSTICE EWING delivered the opinion of the Court.

NANCY WATKYNS brought an action of assumpsit against Morehead, for the rent of a farm. She declared in three counts, but a demurrer having been sustained to the second, we will notice only the first and third. The first is a count for use and occupation for three years, commencing on the first of March, 1841. The third, on an agreement to lease a farm for one year, commencing on the first of March, 1843, and ending on the 1st of March, 1844, at and for an annual rent of $200 in money, and $20 in fencing, payable on or before the 1st of March, 1844, and in consideration of the said lease, an assumpsit to pay as aforesaid. The facts were agreed, and the case submitted to the Court, and judgment rendered for the plaintiff for $220 in damages, from which the defendant has appealed to this Court.

The facts agreed are in substance as follows: The plaintiff leased to the defendant her farm, by parol lease, for four years, commencing on the first day of March, 1841, at the annual rent of $200 in money, and $20 in fencing, payable at or before the end of each year; and the defendant entered under the lease and occupied during the years 1841 and 1842, and two months only before the 1st of March, 1843, or commencement of the third year, he notified the plaintiff that he intended to quit on the said day, and he did quit, and did not occupy the farm for the third year. And it is for the rent of the third year that this suit is brought. The only questions to be decided are, had the plaintiff as landlord, under our statute of frauds, a right to six months' notice, of the tenant's intention to leave prior to the commencement of the third year, and if such notice was not given, had she the right to treat the

defendant as her tenant for the third year, and to recover from him the agreed rent ?

In tenancies from year to year, for the benefit of husbandry, the right to six months' notice of an intention to terminate the lease, is mutual between landlord and tenant. As the landlord has no right to turn out the tenant without such previous notice to his tenant, so the tenant has no right to quit without such previous notice to his landlord. As the tenant, without such notice, might be deprived of an opportunity to secure his crop, and provide another home, so the landlord without such notice might be deprived of an opportunity to procure another tenant, and his farm might lie waste or uncultivated. So it is as much for the benefit of husbandry, that the one should have notice as the other, and is equally consistent with fair dealing and the mutual interests of the parties. And though a shorter notice might, in many cases, be sufficient to enable the parties to escape from the consequences of the omission, yet in many cases six months' notice would be scarcely sufficient to enable them to do so; as in the instance put by the counsel, of a lease of the Galt House, in Louisville, six months' notice might scarce suffice to enable the landlord to procure another suitable tenant. To obviate uncertainty in the proof, and in the application of it to each particular case, and to enable the parties to know their duty, the law has fixed, according to English adjudications, upon six months as a definite and reasonable time in all cases, of an annual holding when notice is required. This being the rule applicable to tenancies from year to year, the qestion arises, whether, by the provisions of our statutes, under the lease recited, and the entry and occupancy of the defendant as tenant for two years under it, the plaintiff as landlord, can treat and hold him as tenant, to the duties and responsibilities, in respect to notice incumbent on a tenant from year to year.

Our statute of frauds provides, that "no action shall be brought whereby to charge any person upon any contract, for the sale of lands, tenements or hereditaments, or the making any lease thereof, for a longer term than one year, or upon any agreement which is not to be perform-

MOREHEAD
vs
WATKYNS.

In tenancies from year to year the right to six months' notice to quit, is mutual between landlord and tenant.

Tho' the statute of frauds prohibits an action on a lease for more than one year, yet if lessee oc-

cupy the premises under such lease, an implied assumpsit arises to pay the value of the use, and six months' notice by such lessee is necessary.

ed within the space of one year from the making thereof, unless the promise or agreement upon which such action shall be brought, shall be in writing, and signed," &c., (1 *Statute Laws,* 734.) And the statute of conveyances provides, "that no estate of inheritance or freehold, or for a term of more than five years, shall be conveyed from one to another, unless the conveyance be declared by writing, sealed and delivered," (1 *Statute Laws,* 437.) These two statutes were enacted at the same session of the Legislature, and within four days of each other.

Taking these two statutes together, as an original question, it might be doubted whether the first statute was intended to apply to any other than *executory* contracts for the sale or lease of lands, tenements, &c., and not to *executed* contracts for a term of not more than five years ; and whether the right of action, is not prohibited merely upon contracts of the former class, and not upon contracts of the latter, where the tenant had entered upon and taken possession of the premises leased, as tenant. And whether in the case of an executed lease for a term of not more than five years, and an entry and possession by the tenant, he or the landlord was intended to be prohibited from their action, or might not maintain one, for a breach of the terms of the lease. The last statute does not prohibit a parol lease for five years, but impliedly authorizes it, and the first statute provides merely that an action shall not be brought to charge any person upon a *contract* for a sale, or the making any lease for a *longer* period than one year. But this Court, by their former decisions, have indiscriminately applied the provisions of the first statute to both classes of cases, and have disallowed the recovery of rent upon an *executed* contract of lease for a longer period than one year; but have allowed a recovery against a tenant upon an implied contract to pay for use and occupation, and have allowed the contract to be used as evidence of the stipulated amount of rent agreed to be paid, *Roberts* vs *Tennell,* (3 *Monroe,* 251;) *Calvert* vs *Simpson,* (1 *J. J. Marshall,* 548.) While they have so restricted the landlord in his right of action upon the contract, they have determined that a tenant who has entered under an executed parol lease for

·a time not exceeding five years, can hold in despite of
·the landlord, and cannot be ousted during the term, by any process known to the law, *Gudgell* vs *Duvall,* (4 *J. J. Marshall,* 230.)

Notwithstanding these decisions, it might still be doubted whether on an executed lease, and entry and possession of the tenant under it, as he has a right to remain, the landlord might not maintain an action upon an implied promise to pay for the lease or estate acquired by the lease, its annual value at least, if not the sum stipulated for as rent, after the day of payment has elapsed or the lease expired. If the tenant has occupied, an action will lie and a recovery may be had we have seen, ·upon an implied promise to pay. And if the tenant chooses to leave, he leaves of his own accord, and we at present see no good reason why he might not be held responsible upon an implied promise to pay for the lease estate, and possession acquired under it. The contract of lease is not void but valid; and though he may be prohibited from maintaining an action upon the contract, we can perceive no good reason why he might not maintain a suit upon the implied promise to pay for the lease estate, and possession which he obtained. Nor is he restricted from his action by that provision of the statute which prohibits an action "upon an agreement which is not to ·be performed within the space of one year from the making thereof." For this provision has been construed not to prevent an action upon the implied promise, springing out of the transaction: *Roberts* vs *Tennell,* *supra.* Hence if money be loaned upon an agreement to refund it, in two or more years, or a horse be sold and delivered upon an agreement to pay for him two or more years thereafter, though an action cannot be maintained upon the *contract* to refund the money or pay for the horse, it cannot be doubted, that after the time limited by the contract for refunding the money or paying for the horse, that an action might be maintained upon the implied contract to refund or pay. So it might be contended that after the time for payment of the rent had elapsed, upon an executed lease and entry of the tenant, that an action might be maintained upon the implied promise to pay

the rent or value of the estate acquired. But waiving those considerations and conceding that an action might not be maintained against the tenant, after he abandoned the possession, upon his implied promise to pay, yet if he has a right to hold on to the possession and cannot be ousted, if he may break up the lease and leave at discretion, he should at least be held to the duties and responsibilities incumbent on a tenant from year to year.

If the benefit of husbandry requires that the tenant, from year to year, shall give six months' notice of his intention to terminate the lease and leave, the benefit of husbandry equally requires that a tenant for five years, who may choose, capriciously, to break up the lease and leave, should give six months' notice of his intention to do so. And if the former is held to the obligations of a tenant and to the payment of rent for the succeeding year, if he fails to give notice, so should the latter be held to the like responsibility. Indeed, if the former, whose lease the landlord may terminate at pleasure, at the end of any year, upon giving him six months' notice to quit, may be held to such responsibility upon his failure to give notice; much more, it would seem, in the latter case, where the landlord has no power to terminate his lease, or oust him from the possession during the full term of five years, for which he entered, should he be held liable as tenant, for the succeeding year at least, in case of his failure to give a similar notice. If the tenant could not be turned out by his landlord, under such a lease during the term, and if he was forced out, might maintain an action of trespass against his landlord, or be restored to the possession by writ of forcible entry and detainer, of which we have no doubt, and yet might leave at pleasure, and the landlord have no remedy against him for even the succeeding year, but might, by his sudden abandonment of the premises, without notice, be subjected to the loss of rent for the succeeding year, there would then be no mutuality in the duties, obligations, or responsibilities between the landlord and tenant.

The English Courts have gone far in the construction of their statute of frauds, and of leases made under it, to convert tenancies merely at will, into tenancies from

year to year, with a view to the enforcement of this equitable principle of notice.   Though their statute of frauds expressly provides that all leases, &c. made by parol and not put in writing, &c. shall have the force and effect of leases or estates *at will only*, except leases not exceeding the term of three years, of a designated class, yet the Courts have construed all leases by parol, for a term of more than three years, as tenancies from year to year, and have subjected the parties to all the duties and responsibilities of such a tenancy.   Much more, according to the same equitable rule of construction, should a tenant under our statute, who has a right to hold on to the possession under his parol lease, be subjected to the like duties and responsibilities to his landlord.

Upon the whole, therefore, we conclude that the defendant, as tenant by parol under our statute, for the time of five years, was bound to give six months' notice to the plaintiff, his landlord, of his intention to terminate the lease, and having failed to do so, the plaintiff had a right to regard him as her tenant for the third year at least, and the law raises an obligation upon him to pay rent, from which a promise to pay is implied.

The judgment of the Circuit Court is, therefore, affirmed with costs, &c.

*Caperton, Allan & Houston* for plaintiff: *Hanson* for defendant.